UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6311-CR-HUCK
MAGISTRATE JUDGE BROWN

01 APR -6 PM 3: 18

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CLARENCE LARK, et al.,

    Defendant.

_____/

### UNITED STATES' MEMORANDUM OF LAW
### ON PROPERTY SUBJECT TO FORFEITURE

The United States submits this memorandum to address legal issues raised at the April 3, 2001 hearing on defendant's emergency petition for return of seized assets. In support, the United States submits:

1.    At the hearing, the Court requested legal authorities regarding a) the United States' position that any profits to be derived from the rental use of the vehicles[1] seized in this matter would be forfeitable as proceeds, and b) the Court's authority to take any other action to preserve forfeitable assets during the pendency of the case.

2.    As to issue a), paragraph (1) of 21 U.S.C. §853(a) allows the United States to forfeit any real or personal property constituting, <u>or derived from</u>, proceeds obtained by the defendant

---

[1] As the Court is aware, the vehicles in question were seized pursuant to seizure warrants issued on November 7, 2000, by Magistrate Judge Barry L. Garber, after finding that probable cause existed to believe the vehicles were purchased with proceeds traceable to narcotics. Additionally, the Eleventh Circuit held in <u>United States v. Bissell</u>, 866 F.2d 1343, 1355 (11th Cir. 1989) that probable cause to restrain a defendant's assets under 21 U.S.C. §853 may be based upon the grand jury's return of an indictment against the property (vehicles). Thus, under the law of this Circuit, probable cause has been established.

through the underlying drug violations. The explicit terms of the statute[2] allow for the forfeiture of both direct and derivative property. For purposes of §853, "proceeds contemplates gross proceeds and not merely profits." See United States v. Keeling, 235 F.3d 533,536(10th Cir. 2000) and United States v. McHan, 101 F.3d 1027,1042(4th Cir. 1996). Additionally, the provisions of §853 are to be liberally construed to effectuate its remedial purpose. See 21 U.S.C.§853(o).

3.  The legislative history also specifies that Congress intended to render forfeitable[3] under §853 (a)(1) "the same type of property that was already subject to civil forfeiture under 21 U.S.C. §881(a)(6)." S.Rep.No. 98-225, 98th Cong., 2nd Sess., at 211 (1984), U.S. Code Cong. & Admin. News 1984, 3182, at 3394. Section 881(a)(6) authorizes the forfeiture of "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter." The Eleventh Circuit has held that this includes all value-for-value exchanges of proceeds. See United States v. $4,255,000.00, 762 F.2d 895, 905 (11th Cir. 1985)(suggesting that cumulative forfeitures may be permissible under §881(a)(6), cert. denied, 474 U. S. 1056, 106 S.Ct. 795, 88 L.Ed. 2d 772 (1986) . If a drug dealer has a $100 bill, which represents proceeds, and exchanges it with a cohort for five $20 dollar bills,

---

[2] The language of the RICO statute on forfeiture proceeds at 18 U.S.C. §1963(a)(3), is essentially identical to that in 21 U.S.C. §853(a)(1), and therefore, the interpretations and application of the two provisions should be analogous. See United States v. Campos, 859.F.2d 1233, 1236 n.5 (6th Cir. 1988).

[3] Title 21 U.S.C. § 853(j), **Applicability of civil forfeiture provisions** provides that: Except to the extent that they are inconsistent with the provisions of this section, the provisions of Section 881(d) of this title shall apply to criminal forfeiture under this section.

then both the $100 bill and the five $20 dollar bills are forfeitable (assuming the transferee is not an innocent owner). Id. See also United States v. Banco Cafetero Panama, 797 F.2d 1154, 1161 n.9 (2nd Cir. 1986)(same).

4. The United States already established probable cause to believe the vehicles[4] were purchased with narcotics proceeds. Consequently, the vehicles seized along with any profits derived therefrom is all forfeitable property like interest earned on a bank account with forfeitable monies. See United States v. $94,000.00 in United States currency along with any interest earned thereon in Financial Savings Association account # 79-70063411, and $40,000.00 in United States currency, along with any interest earned thereon in Lincoln State Bank account #10-002-205-15, 2 f.3d 778 (7th Cir. 1992) (Bank accounts along with the interest earned therein were forfeited) Defendant should not be allowed to make a profit with tainted assets obtained from proceeds.

5. In United States v. Reed, 924 F.2d 1014 (11th Cir. 1991) the United States in a criminal RICO action, was seeking the forfeiture of a business building acquired during the defendant's racketeering activities in 1981 through 1984. The building's value had increased at the time of its sale in 1989. The Court forfeited the building and ruled that all rights, title and interest vested in the government in 1981, before the defendants encumbered it with a mortgage. Consequently, the government was entitled to the increase in value of the building which accrued during that period. Likewise, the United States should be entitled to the profits which defendant seeks to obtain from the proposed rental of the vehicles seized in this matter.

---

[4] Pursuant to the forfeiture count of the indictment, the United States is seeking forfeiture of the vehicles under three separate legal bases: 1) RICO forfeiture pursuant to 18 U.S.C. §1963; 2) narcotics forfeiture pursuant to 21 U.S.C. §853, and 3) money laundering forfeiture pursuant to 18 U.S.C. §982, for violations of 18 U.S.C. §1956 and 1957. See indictment. D.E. # 3.

6. Additionally, under the money laundering statute, 18 U.S.C. §982(a)(1), the United States can seek forfeiture of any and all property "real or personal, involved in such offense, <u>or any property traceable to such property.</u>" In the case of <u>United States v. Hawkey</u>, 148 F.3d 920, 928 (8th Cir. 1998), the Court ruled that any increase in the value of the property traceable to a money laundering scheme is subject to forfeiture, regardless of whether the increase results from wise investment, personal effort, or the addition of personal untainted funds. In its discussion of the proper application and scope of 18 U.S.C. §982(a)(1), the Court as an example said that if the defendant Hawkey misappropriated $10,000 and purchased stock that appreciated in value to $30,000 at the time of forfeiture, he would be required to forfeit the stock. Id.

The Eleventh Circuit and other courts have consistently held that under the money laundering statute, the United States can forfeit all proceeds regardless of whether they change form. See <u>United States v. Ward</u>, 197 F.3d 1076 (11th Cir. 1999) ("once proceeds become tainted, they cannot become untainted", funds in a commingled bank account still involve SUA proceeds even though months have passed, and other transactions have occurred, since the SUA proceeds were commingled); <u>United States v. Suba</u>, 132 F.3d 662, 674 n.23 (11th Cir. 1998)(transfer of $1.7 million involved SUA proceeds even though defendant had obtained only $1.4 million in fraud proceeds); <u>United States v. Pergler,</u> 1998 WL 887113 (N.D.Ill. 1998)(if defendant secures bank loan with real property purchased with SUA proceeds, then loan proceeds are SUA proceeds, and purchase of car with such proceeds is a section 1957 violation); <u>United States v. Mankarious</u>, 151 F.3d 694 (7th Cir. 1998)(if check constituting proceeds is deposited into bank account, and second check is written on that account, second check constitutes proceeds, even if first check has not yet cleared).

7. As to issue b), under either 18 U.S.C. §1963(d) or 21 U.S.C. §853(e)(1)(A), "the

4

Court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, <u>or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section</u>". (Emphasis added). This section allows the Court to restrain the defendant from using forfeitable assets prior to trial. The restraints may be imposed by way of a restraining order, an injunction, the execution of a performance bond, or a temporary seizure of certain assets which, because of their liquidity, can be readily transferred or hidden. From this broad grant of authority, the Court can issue a protective order appointing a person to monitor a business and control its operation, as the government did in the case of <u>United States v. Ludwig Fainberg</u>, Case No. 97-054-CR-Ferguson, a/k/a Porky's case. A copy of the protective order entered in Porky's case is attached as Exhibit One.

The Court is empowered to preserve the assets subject to forfeiture by post-indictment restrains on the assets subject to forfeiture. 21 U.S.C. §853(e)(1) specifically provides that:

> Upon application of the United States, the Court may enter a restraining order or injunction . . . or take any other action to preserve the availability of property described in subsection (1) of this section for forfeiture under this section–
>
> > (A) upon the filing of an indictment or information charging a violation . . . for which forfeiture may be ordered . . . and alleging that the property . . . would, in the event of conviction, be subject to forfeiture under this section;. . .

And the Protective Orders, Restraining Orders, Performance Bonds or Injunctions, for assets that are subject to forfeiture, may be entered without prior notice and opportunity for a hearing. <u>See</u> <u>United States v. Bissel</u>, 866 F.2d 1343 (11th Cir.) <u>cert. denied</u>, 110 S.Ct. 146 (1989); <u>United States v. St.</u>

Pierre, 950 F.Supp. 334 (M.D. Fla. 1996).

According to the Senate Report on the Comprehensive Crime Control Act of 1984, "the probable cause established in the indictment or information is, in itself, to be sufficient basis for the issuance of a restraining order." Senate Report no. 225, 98th Cong., 2d Sess. 203, reprinted in 1983 U.S. Code Cong. And Admin. News, 3182, 3385. See, United States v. Monsanto, 924 F.2d 1186, 1193 (2nd Cir. 1991)(en banc)("because of the exigent circumstances presented, notice and hearing need not occur before an ex parte restraining order is entered pursuant to 853(e)(1)(A)."); see also, United States v. Bissel, 866 F.2d 1352 (pretrial restrain of assets does not violate due process); United States v. Musson, 802 F.2d 384, 387 (10th Cir. 1986)(district Court can rely on the probable cause in a Grand Jury Indictment in issuing a restraining order restricting free alienation of property possibly subject to forfeiture).

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

BY: _____
WILLIAM H. BECKERLEG, JR.
Assistant United States Attorney
500 East Broward Boulevard, 7th Floor
Ft. Lauderdale, Florida 33394
Tel: (954) 356-7314
Fax: (954) 356-7180
Bar No. A5500074

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and accurate copy of the above and foregoing was mailed

and faxed this 6th day of April, 2001, to Paul D. Lazarus, Esq., 800 Brickell Avenue, PH-2, Miami, Florida 33131-2944.   FAX number (305) 358-4010.

                                           _____
                                           WILLIAM H. BECKERLEG, JR.
                                           ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,     )
                              )   CASE NO. 97-054-CR-FERGUSON
         Plaintiff,           )
                              )
v.                            )
                              )
LUDWIG FAINBERG,              )
     a.k.a. "Tarzan"          )   ORDER ON MOTION OF
     a.k.a. "Lyosha", et al.  )   UNITED STATES FOR ENTRY
                              )   OF PROTECTIVE ORDER
         Defendants.          )
_____)

This comes before the Court on the *ex parte* motion of the United States of America for a protective order to preserve for forfeiture certain property of defendant LUDWIG FAINBERG, pursuant to 18 U.S.C. § 1963(d)(1)(A) and 21 U.S.C. § 853(e)(1)(A).

After reviewing the Government's moving papers, the Court file, and the applicable law, and for good cause demonstrated thereby the Court agrees that a protective order shall issue.

IT IS THEREFORE HEREBY ORDERED that the Motion for a Protective Order is GRANTED.

Accordingly, IT IS FURTHER HEREBY ORDERED that:

1. LUDWIG FAINBERG, individually and as officer and/or beneficial owners of any corporate entity having authority to contract or do business on behalf of the Enterprise, his agents, servants, employees, attorneys, family members, heirs, and those persons in concert or participation with them;

2. The corporation known as Porky's Inc. (doing business as "Porky's Nightclub" or "Porky's"), a Florida corporation located at 885 S.E. 14th Street, Hialeah, Florida;

GOVERNMENT EXHIBIT

3. All attorneys and other persons and entities acting for or in concert with the Defendant or the other defendants; and,

4. All those persons who may be entitled to possession of any portion of the assets restrained herein, whether by virtue of a claim of title, security interest, lien, judgment, contract, or any other legal or equitable interest;

ARE HEREBY enjoined, restrained and prohibited from directly or indirectly transferring, selling, assigning, pledging, distributing, giving away, encumbering, destroying, dissipating, wasting, disposing of or moving in any manner any right, title or interest in any assets owned by the Defendant, except in the ordinary course of business, (as defined below) or upon approval of the Court.

As used herein the term "ordinary course of business" refers to the following types of expenditures and transactions:

a. purchase of inventory, supplies and equipment in an arm's length transaction;

b. payment of present and future business liabilities resulting from ordinary business operations, including for example payments on existing obligations such as accounts payable, mortgage and contract for deed payments, lease payments, insurance premiums, license fees, utilities and taxes;

c. ordinary use of supplies and equipment;

d. payment of reasonable business salaries and wages, including reasonable attorney's fees related to the defense of the

forfeiture aspects of this case, but in no event more than $150.00 per hour for such attorney's fees; and,

e. payment, pursuant to an arm's length transaction, for the normal and average upkeep or maintenance of any real property, equipment or furnishings necessary for ordinary business operations.

As used herein the term "ordinary course of business" shall not include wages, salary or any other disbursements directly or indirectly to any of the defendants nor shall it include any new or additional encumbrance, pledge or indebtedness with respect to the assets of the corporation without the approval of the Court.

IT IS HEREBY FURTHER ORDERED that:

1. the United States, acting through the United States Marshals Service, the DEA, the FBI, and such other individuals or entities as the Attorney General may employ or appoint, is hereby authorized, with respect to Porky's, to forthwith enter the premises, inventory all assets and conduct an appraisal thereof;

2. all transactions conducted by Porky's shall be recorded pursuant to generally accepted accounting principles and be evidenced by cash register slips, a sales receipt journal, bank deposits, numerical invoices and order forms, disbursements, journals, checks, computer printouts, inventory lists, and any other ordinary business record;

3. all records and documents regarding Porky's business transactions shall be maintained and provided to the Government on a bi-weekly basis;

3

4. the United States is hereby authorized to designate an individual or firm with business and accounting experience to monitor the operation of Porky's to ensure compliance with the requested Restraining Order; and,

5. Porky's shall forthwith deposit all quarterly profits earned, after deducting ordinary business expenses, into a separate interest-bearing account which shall be monitored by the United States Attorney or his designee and from which no withdrawals shall be made without Order from the Court. Said profits will be distributed to the party prevailing on the forfeiture aspect of this case.

IT IS FURTHER ORDERED that if any of Porky's assets have been transferred or disposed of outside the ordinary course of business, the Defendant, individually and as representative of Porky's, shall account to the Court for the disposition and location of the asset(s). Further, this Protective Order applies with equal force and effect to restrain the further transfer or disposition of those asset(s) and/or their proceeds.

The property of the defendant subject to this Protective Order is:

A. All of the right, title, and interest, appurtenances, assets and improvements in or relating to or constituting or derived from the business known and doing business as Porky's Inc. located at 885 S.E. 14th Street, Hialeah, Florida 33010.

The United States is hereby further authorized to take whatever reasonable measures are deemed necessary to enter any of

the above-referenced premises in order to inventory the contents and evaluate the asset(s) subject to this Motion and the Court's Protective Order.

The United States shall serve a copy of this Court's Protective Order as soon as practicable after the issuance of the Protective Order on the defendant(s), and all other persons, and entities to be restrained, notice of this Order may also be accomplished by sending a copy of this Order to the person or entity involved via facsimile transmission.

IT IS FURTHER ORDERED that any typographical errors in the Court's Protective Order and/or in the legal descriptions of the subject corporations, properties and assets shall not affect the enforceability of this Court's Protective Order.

IT IS FURTHER ORDERED that a copy of this Order and the Motion for a Protective Order shall be served on the Defendant Ludwig FAINBERG, and the management of Porky's Inc. within forty-eight (48) hours of the date that this Order is entered.

DATED: 2/17/97

WILKIE D. FERGUSON
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

VIA CERTIFIED U.S. MAIL

-Ludwig Fainberg (#49987-004)
Federal Detention Center
P.O. Box 019118
Miami, FL 33101-9119

-Kreyna Maylar
11301 N.E. Miami Gardens Drive
Apt. 1502
North Miami Beach, FL 33179

-Ludwig Fainberg
3681 N.E. 200 Street
Aventura, FL 33180

-Ludwig Fainberg
19101 Mystic Pointe Drive
Unit 2911, No. 3
Miami Beach, FL 33180

-Hugo Calvo
4525 West 20th Avenue
Hialeah, FL 33012

-Attorney for Ludwig Fainberg
Joel Kaplan, Esq.
100 N. Biscayne Blvd.
New World Tower Bldg., Suite 1100
Miami, FL 33132

-William and Betty Seidle
640 Sabal Palm Rd.
Miami, FL 33137

-Attorney for Porky's
Louis J. Terminello
2700 S.W. 37th Avenue
Miami, FL 33133

-Coastal States Mortgage Co.
4000 Hollywood Blvd., Suite 425 South
Hollywood, FL 33021